The case of Uronis, I hope I'm pronouncing that right, versus Cabot Oil & Gas. Morning, Counsel. Good morning, Your Honor. Thank you, and may it please the Court. Anjuli Murthy on behalf of the appellant, Matthew Uronis, and I'm reserving two minutes for rebuttal. At the outset, unless the Court has questions, because the District Court did not reach the issue of whether GDS is covered as a person under the Fair Labor Standards Act, I do not plan to address that until rebuttal to address whatever points the appellee makes, although I do believe we win on that issue if the Court reaches it. Here, Your Honors, the appellant, Mr. Uronis, has written smoking gun evidence, which we never have in these cases, by the way. It's very unusual. Excuse me, how much time did you reserve for two minutes? Well, if you've got to deal with that issue, don't you really need longer than two minutes? I don't think so, Your Honor. I think I can deal with it pretty succinctly. Okay. You're the lawyer. Okay. If the Court has questions about it and does plan to reach that issue, if you have questions at this time, I'm certainly happy to answer those questions and do that in this portion of the argument. How do you address counsel's argument that this was just too attenuated? Your Honor, here, again, we have this text message that says that this entire group of people is being excluded because of an FLSA action. And the reasonable inference to be drawn from that is because of anticipated testimony and joining in that action. Otherwise, there's no reason to single this group of people out. But at that point, your client had not joined the litigation and had not been subpoenaed to testify, correct? He had not, but he was, as it states in his complaint, he made the allegation that he was about to join the litigation and that he was about to testify. And in addition, because of this Court's holdings under Brock v. Richardson and Fogarty v. Bowles, the focus is properly on the employer's intent. And here, the employer's intent was clearly to retaliate. So regardless, honestly, of whether Mr. Urona's planned to join or testify, which he did, giving us an additional step here, an additional step towards the ultimate goal, here we have a clearly expressed intent by the employer to retaliate on the basis of disconnection to the action. And the, again, reasonable inference, that's all we need to do here because we're at the pleading stage. He did retaliate. Pardon? There was a retaliation. Of course there was a retaliation. This whole action was designed purposefully to chill participation. And the retaliation took the form of what? Not permitting him to become an employee? Not permitting him to become an employee and also suggesting that once the action died down, a.k.a. once we know that you will not provide testimony, once we know that you do not participate, once we know this group of people doesn't make a big deal out of this issue Mr. Messenger has raised, then maybe you can have a job. Let's see how you do. The implication of that is necessarily that this is a retaliatory action. It is designed to chill participation in these actions. Yes, this is the heart of your case, isn't it? It is. The retaliation. Of course. Yes, 215A3 is an anti-retaliation statute, and that's what we're saying happened here. You say that was wrong because? It was wrong because when an employer has knowledge that an employee is about to testify or join in an action, that employer cannot take preemptive retaliatory action against an entire group of people to say, well, if I fire you tomorrow, then it's retaliation. Does that belief on the part of the employer have to be correct? Is it the rule that the employee has to actually have taken steps to testify, or is it the rule that it's important what the employer believes the employee is going to do? Under Brock v. Richardson and Fogarty v. Bowles, which of course your Honor was on that panel, it is about the employer's intent and the employer's belief, not what the employee actually did. If the employer's intent is to retaliate, if the employer believes that the employee will testify, including through joining the lawsuit, and takes action on that basis, then that is retaliation regardless of the employee's intent. So how do you distinguish your position from the opinion out of the District Court in Virginia that counsel leans on so heavily? I'm sorry, your Honor, I didn't hear you. Your colleague leans heavily on a District Court opinion out of Virginia. Your Honor, I would point to the Circuit Court decision in that case. The Fourth Circuit made a ruling in Ball, and that ruling did not adopt any of the reasoning of the District Court with respect to this issue of what the meaning of about to testify is. And here, the District Court in this case really tries to thread through the eye of the same needle an undefined term that has to be construed broadly in light of the remedial purpose of the statute. When the Fourth Circuit decided the case, in fact, it specifically delineated that impending or anticipated testimony is enough. It does not have to be subpoenaed. It doesn't make sense for the word subpoenaed to be an invented standard, this unwritten rule in the statute, because this statute protects, for example, people who are identified on a witness list, right? Why should it make a difference if the person is identified on a witness list by a plaintiff or the Department of Labor, or if the employer decides in its own mind, you know what, I think all these people are on a witness list. All these people are likely to be on a witness list. I'm going to retaliate against all of them in order to chill this participation. Where the knowledge comes from really shouldn't matter, and there shouldn't be some subpoena requirement. And the Fourth Circuit did not impose that subpoena requirement. Rather, the Fourth Circuit's holding was only based on whether or not there was an instituted proceeding, and whether or not you have to have an instituted proceeding in order for retaliation to follow. And the Fourth Circuit found that, in fact, there likely would have been retaliation based on the impending unscheduled testimony. Obviously, in Ball, the testimony was not scheduled because the action wasn't even filed yet, so there couldn't be a subpoena, but then it would have been retaliatory. Here's the word impending. Now, does there have to be an instituted proceeding, an actual instituted proceeding? So, interestingly, Your Honor, under Ball, they said yes. However, the Ball decision was decided, importantly, before the Kasten decision came out of the Supreme Court. In this case, the proceeding had not been instituted. In this case, Your Honor, it had. The messenger proceeding was instituted, and Mr. Uranus was to be a participant and was a participant in the messenger action. Mr. Messenger had filed a motion for conditional certification, and the complaint clearly covered the group of people of which Mr. Uranus was a part that could opt into that action. Mr. Ball was to be is sufficient to be a member of the action, although he was not actually a member at the time of his discharge. Yes. Even under Ball, the court essentially found that if there had been an instituted proceeding, then Mr. Ball's testimony in that proceeding, even though it wasn't scheduled, even though it was only anticipated at some unknown future date, would have been sufficient. But because there was no instituted proceeding, it wasn't enough. After that decision, the Supreme Court ruled in Kasten that there does not need to be a filed complaint in court, that that is too narrow a reading of the FLSA's anti-retaliation provision. And so that case, I think, would have been decided differently. You would have qualified under the Supreme Court's decision. The thing that bothers me is, does this apply to prospective employees? Now, I know you wanted to put that off for rebuttal, but I think that at this point in this litigation to me, that is a very important point, that Mr. Uranus had applied for employment, but he had not been accepted as an employee. Now, he found out from this email he was not accepted because the boss of the company had taken the decision that no one involved in the messenger case should be allowed to be a part of the company. But what is the standard? Do you have to be an employee? Can you be a prospective employee? Your Honor, I'm happy to answer that question, and I answer it as follows. I don't think the court has to reach that question in this case because the definition of employer under Section 203D of the FLSA includes not only people for whom the prospective covered person actually works, but it also includes any person who acts in the interest of an employer. And here we allege that GDS was acting in the interest of someone who is undisputably alleged to be an employer, CABIT, when it made this decision. So it was not acting only as a prospective employer. It was acting essentially as an agent, as a person in the interest of and on behalf of CABIT when it made this decision. So under that standard, we don't even need to get to whether a prospective employee is covered. However, I think that the text of the statute, which prohibits retaliation by any person against any employee, as opposed to other sections of the statute which prohibit retaliation by an employer with respect to his employees, the language is very clear in other portions of the statute, limiting it to what an employer may do with respect to his employees. The anti-retaliation provision applies to what any person may do to any employee. And here we have an employee of CABIT, and we have a person, GDS, that is discriminating. The remedies afforded under Section 215A3 include employment in addition to re-employment. Those two words are important. You re-employ somebody who has been fired. You employ a prospective employee. There's no reason to include both of those words if employment was not contemplated with respect to a prospective employee. The inclusion of that word simply wouldn't make sense. And while the APELE may point to a difference in Section 216B, the remedies, which allows for remedies against an employer for violations of Section 215A3, I would say that at a maximum that constitutes an ambiguity, which under applicable precedent has to be resolved in favor of coverage. Where under the actual section prohibiting retaliation, they made it any person with respect to any employee, not only his own employees. But again, I don't think we have to get there, because I think that GDS falls under that definition of an employer, under Section 203D, where it was acting in the interest of CABIT, the employer, and therefore became an employer itself under that definition. And that fits neatly with this court's holding in Boe v. Judson, where the union, a non-employer, was found to be liable for retaliation under the FLSA. Section 215 states that it's illegal for any person to discharge or in any other manner discriminate against any employee. Very specific. Yes. So you say you qualify nonetheless? Yes. Because there are other sections, Your Honor, of the statute. For example, the minimum wage and overtime provisions that limit what an employer may do with respect to his employees, his particular employees. This is limited to what any person, whether or not an employer, may do to any employee, whether or not his employee. It's a different group of people, and Mr. Uranus falls under that definition. And, again, regardless, GDS acting as an agent of CABIT was acting in the interest of an employer, and therefore Mr. Uranus is covered as an employee under that standard as well. So as a segue to your colleague's argument, how much deference, if any, do we give the Secretary's interpretation of the statute? Your Honor, I would defer the issue of deference to the Secretary, who I believe is probably… Fair enough. …better to use their time on that, especially since I'm out of time. Pass the ball. Okay. Thank you. Good morning. Good morning. May it please the Court, Caitlin Poe for the Secretary of Labor, as amicus in support of the plaintiff appellant. Can you keep your voice up, please? Yes. Defendants here refuse to hire Mr. Uranus because he was about to file his consent to join the messenger collective action and act as a witness in that action. This conduct, creating an atmosphere of intimidation around the lawsuit, is squarely prohibited by Section 15A3. This Court's decision in Brock v. Richardson rightly focused on the employer's conduct and the effect of that employer conduct on the willingness or ability of employees to freely decide whether or not to exercise their rights. It was not based on any minimum threshold of activity on behalf of the employee. The Eighth Circuit and Southwell v. Rice likewise reflected that in adopting this Court's holding in Richardson, rejected an affirmative activity argument explaining that 15A3 is focused not solely with vindicating the rights of aggrieved employees, but with fostering an environment in which employees feel free in exercising their rights. You do refer to Uranus as an employee. Yes. He was indisputably an employee of Cabot. Yes. And as noted, we agree that the issue of GDS as an employer is not ripe for consideration. While the District Court intimated its view, it explicitly said it was not engaging on the issue. And the Secretary's position in the Dellinger case in the Fourth Circuit, we took the position that Section 16B would apply in the context of a prospective employee. But we do agree that the issue is not ripe for consideration at this time. Was that his position, a prospective employee? Dellinger? Yes. They're the facts involved in an applicant at an entirely unrelated firm. Here, we have the relationship between GDS and Cabot, which is quite different. So that would be a distinguishing factor. But because the Secretary has not fully weighed in on that issue substantively, today we can't really advocate one side or the other. But we do agree that it's not ripe for consideration and it's not necessary to reverse the District Court's holding. How much deference do we give to the Secretary in this case? We've argued for a substantial weight under Skidmore. The Secretary's interpretation here is consistent with decades-long precedent, interpreting 15A3 generally in a manner that focuses on the chilling effect of employer conduct and the effect that has on the assertion of employee rights. It's also consistent with our interpretation of about to testify as set forth in the Secretary's amicus brief in the Ball litigation. We weighed in there, arguing that testimony is protected where the employee intends or expects to testify. So it's a consistent, longstanding interpretation. It's also consistent with the plain reading of the statute. The phrase about to testify is fairly read to protect an employee whose testimony is impending or anticipated in a lawsuit such as this. And it's consistent with the purpose of the statute, which again, this Court has aptly noted in Richardson, is 15A3 is concerned with preventing fear of retaliation from silencing worker voice. And here, that's exactly the effect of the conduct here. The text message makes this plain. They squarely refuse to hire Mr. Uranus because of the lawsuit. That's a direct quote. The causal link here between his status as someone about to testify and his refusal to get a job is causally linked. That is evident on the face of the text, at the very least, plausibly so, which as we've noted at the pleading stage, that's all that needs to be shown is that it's plausible. What do you say is the correct remedy for that conduct? The correct remedy? Yes. Ultimately, I couldn't speak to what the appropriate remedy is. He was not hired because he was about to. He was not an employee, but not hired because he was about to testify. Section 16B does contemplate employment as a permissible remedy. Also, reemployment. So in the context of Cabot, who is its former employer, Section 16B provides a variety of remedies for exactly this situation. And it goes to the fact that he was denied employment, as this court has recognized in Richardson. That was used as a retaliatory tactic to not only punish someone who was about to testify, but deter him and others from doing so. And this kind of anticipatory retaliation taken to chill protected activity, to chill participation in a Section 16B collective action, which is critical to the Act's overall enforcement. Employees must feel free to file, join, and testify in collective actions for those actions to be successful. But here, the result of the district court's holding is to effectively motivate employers to swiftly retaliate once an employee has been identified as a potential witness, but before they can, in fact, opt in. And that simply cannot be the correct interpretation of the phrase, about to testify. If the employer incorrectly believes that the employee is about to testify, is that sufficient? Yes, that would still be a claim under 15A3. Mistaken belief, this court has recognized in Richardson, that mistaken belief of protected activity, including the statute's protection of those about to testify, violates Section 15A3. What is a fair remedy under the circumstances? Employment, or at the very least, fair consideration. The right that he be hired? I'm sorry? The right that he be hired? Well, at this point, given that we're at the pleading stage, the correct remedy for the court's holding here is simply reversal and give the plaintiff a chance to put on his case. It bears noting that we're only at the pleading stage, so plaintiff has not had the opportunity to demonstrate the full merits of the case. But ultimately, were this complaint to be proven, employment would be an appropriate remedy. Would that be a vacate and remand, rather than reversal? I suppose so. We'll figure it out. Okay. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the court, my name is Christian Ankoviak. I'm here on behalf of the appellees, Cabot Oil and Gas and Gas Search Drilling. It's a privilege to be here today, and I'm grateful for the opportunity to speak with you. I know you've read the briefs, you've heard great arguments from my colleagues and friends on the other side. I really just have three brief points I want to make, and I'm happy to get out of your way to ask questions of me. The first point is this. If you believe that Section 15 requires the plaintiff in a case to plead notice of an overt act, then the district court correctly decided this motion to dismiss, full stop. This is not a circumstance in which we necessarily need to wade into more complex questions about, for example, whether or not somebody needs to be an employee or an applicant for purposes of raising a Section 15 retaliation claim under the FLSA. We also don't need to wade into all of the different possible types of conduct that might fall into things like the about to testify clause. The truth is the plaintiff in this case did nothing. They did nothing in their pleading except note that they secreted their anticipation of participating in the FLSA case. So you are saying that the mistaken belief of the employer that the employee is going to participate in another case is not sufficient? I would say two things in response to that, Your Honor. The first is that if there is an overt act. By whom? By the plaintiff. An overt act by the plaintiff. I filed a consent to join. I spoke with the Department of Labor. You're referring to Uranus. That's correct. How about Paragraph 39? Even before Plaintiff applied for employment with GDS, he had contacted Michael Messenger. Isn't that an overt act? That is an overt act. There is nothing in the pleading to suggest that my client knew that he contacted Mr. Messenger. And so the question. Paragraph 46. Unfortunately, I found out the day after I talked to you that no one worked for Herb is supposed to be on a capital location. Doesn't that suggest that they knew about this? Well, it may, Your Honor, if this was pled differently. You'll notice in the complaint that there's no indication of who sent the text message to Mr. Uranus. There's no discussion of that in here. That entire point has been glossed over in the briefs of the case and by the arguments from the other side. There's no indication who wrote this text message. Well, it says GDS decided not to hire, right? And then there's this text. The text is quoted in the complaint. That's correct, Your Honor. That's not enough in your worldview. It's not enough in my worldview, Your Honor, because there's no indication that this, for example, came from the hiring supervisor, a person who interviewed Mr. Uranus for the case. In fact, Your Honor, what we have discovered subsequent to this is this text message came from somebody who was a referral source for Mr. Uranus, another roused about on the job, not somebody in the management of GDS. We can't consider that. I appreciate the point. But the point that I'm trying to make is the complaint needed to do more to indicate plausibly that GDS had an intent to discriminate or, in this instance, retaliate against Mr. Uranus, whether on actual belief or mistaken belief. They have not pled that. So to conclude the first point, if you look closely at the text of the complaint, Mr. Uranus did not take an act sufficient to put the employer, in this case, on fair notice that he engaged in conduct to which they could retaliate against him. Just to clarify, the issue here was joining the messenger action. Is that accurate? That's correct, Your Honor. And you say that that was not sufficient to cause the employer great concern about Mr. Uranus' conduct? So at the time that he was denied employment, he had not yet opted into the messenger action. And, in fact, he did nothing, if you read the text of the complaint, to put GDS on notice even that he intended. He may have privately intended to join. I would concede that point to the other side. He did ultimately. And he ultimately did join. But he did nothing to put anybody on actual notice that that was the case. He opted into the messenger action, I believe, approximately nine days after he was… But his lawyers did become aware of it at some point. Eventually, Your Honor. That's correct. But the question for purpose of the prima facie case would be, can I establish enough in the pleading to plausibly conclude that GDS acted in response, whether it was actual or mistaken belief… Or retaliation. Out of retaliation. That's correct. But if it was a mistaken response, does it have to be on the basis of a particular act by the plaintiff? I believe… Mistaken response. Can't it be something you dreamt one night or something your neighbor whispered in your ear or just a feeling that everyone applying for this job knows about this suit and is going to join it against me? I think that unless there is a piece of direct evidence indicating that in the absence of an act by the plaintiff, that the defendant nevertheless, for example, stated, I believe that you were to testify in this action and therefore… There is no evidence. There is no evidence in front of us. We're talking about a 12B6 motion. That's correct. And my point, Your Honor, is that nothing is pled in the complaint to that point. I understand your argument. Nothing is pled to that point. I understand your argument. And so if they, for example, pled that GDS, something more concrete than the ambiguous text message from an unknown source in the complaint, if they had a specific intent to retaliate against Mr. Uranus because they mistakenly believed him to be ready or about to testify, then I think they would have pled a sufficient complaint. But I don't think that they have pled a sufficient complaint as currently drafted. They needed to do more to get beyond that hurdle. I think the other point that I'd like to raise in connection with that, Your Honor, you mentioned about this idea of opting in in an FLSA case. FLSA putative class members are not automatic class members in litigation. They have to affirmatively take steps to opt in. And those of us who practice in this area know that that's not always 100% true. That's not always the case. In fact, opt-in rates are notoriously low. By opting in, you mean taking a very specific act or... To join the litigation. That's correct. So I don't think it's reasonable. I don't think it's plausible to conclude on the face of the complaint that the company believed he was about to testify simply because he was a putative class member in an FLSA case, when we know the structure of 216B requires him to actually take an affirmative step to participate. Well, doesn't Kasten suggest that we read this statute expansively? It does, Your Honor. And I think consistent with Kasten, what that would mean is looking at Section 15, deciding what activities by a plaintiff would be the predicate act, the overt act, to necessarily trigger somebody to plausibly believe that they were about to retaliate against that individual. So, for example, when you think about complaints, filing a complaint, there's cases talking about, well, does filing a complaint mean doing something formal in court? Can it be more informal, like a complaint to a supervisor? And I think a broad reading is a discussion of how many different types of acts can we put within the sphere of things protected by Section 15. A broad reading does not require us to jettison the acts altogether and instead simply look at the intent. We can't know intent. We don't know intent in criminal law. We require certain predicates. In contract law, we look to objective manifestations of intent because we don't know what's in somebody's mind. We have to look to an act and then decide what can we plausibly infer from that act. That is why they have to plead, in my opinion, a predicate act. First, to establish Section 215 as a matter of pleading. It did not do that here. If instead of a predicate act, we only had intent, I would suggest we would have to move past inference. We would have to have something like clear and unmistakable evidence. They would have to plead that. Clear and unmistakable evidence of an intent to retaliate because we can't infer it because there's no act. Well, they plead that he didn't get the job. That's correct, Your Honor. Why isn't that retaliation? It's retaliation if they plead facts sufficient to conclude that the employer acted because of something the plaintiff did that is protected by Section 215. And Section 215 only really identifies a limited set of circumstances, predicate acts. But then you're saying that a mistaken belief is not adequate. I believe under current case law, mistaken belief with a predicate act is sufficient. But you're saying that there has to be a predicate act with a mistaken belief. That would be correct. And in the absence of a predicate act, the pleading of the mistaken belief would have to be more clear and less attenuated than this text message that we find in the complaint where we don't, for example, have any pleading around who said it or in what context. Simply what was said in the text. It's not even the entire text message. There's an ellipse in the middle of the text message. We don't even know the full context of it. The point is that they have not pled enough to get them over that hurdle. He had to, I guess, in your view, had to have joined specifically and clearly a class that was forming. I think that is one circumstance under which he could have sufficiently pled. That's correct, Your Honor. Pled himself a member of a class. That's correct. Had he perhaps told his supervisor or I'm sorry, the whomever he was speaking with for purposes of the interview process, I intend to join the messenger action. I intend to testify on behalf of Mr. Messenger. That would have been sufficient. And you probably would have been sufficient to get us past the pleading. He did not do that. So about to be an employee is not sufficient in your eyes. It is not sufficient, Your Honor. I find the discussion in Dellinger persuasive on that point. Has any case said that an employee who is not an employee, but a person who is about to be an employee can qualify as a member of the class? I'm not I'm not aware of that circumstance. No, Your Honor. If there are no more questions, I think I've covered directly or indirectly the points that I'd like to make. So I will cede back the balance of my time. Thanks. Thank you. Thank you, Your Honors. May it please the court. I just wanted to address a couple of points that my friend and colleague made up here. Could you could you respond to that last point? Your Honor's was not an employee at the time that the issue arose. He was not an employee of Cabot Oil. He was actually an employee. Was he? Your Honor, in the sense that it is clear. I'm hearing your colleague shaking his head. It is clear based on unapplicable precedent that former employees are covered as employees. Former right. And so it was an employee or a former employee. A former employee is considered an employee for purposes of the act and the anti retaliation provision. Your Honor. The overt act requirement is nowhere in the statute. It is an invented standard that we would encourage this court not to adopt. The phrase about to precludes a reading that would require a past tense over act. This statute protects those about to testify. The way the words work grammatically about to cannot be something that happened in the past. So it cannot require an overt past action in order to be covered. And here, Mr. Your Honor's test has pled that he was about to testify in the action. Although I agree that there is no particular statement in the complaint that it was a GDS manager that sent that text. The statements in paragraph 58 of the complaint are attributed to GDS. Throughout the complaint, the statement is attributed to GDS. And Mr. Your Honor's has pled that GDS was responsible for those statements. Certainly, the text message makes it clear that this is a GDS policy that's being articulated. OK. This case went to trial. Would there be testimony as to the identity of the person who sent the text message? Yes, Your Honor. And frankly, we did not plead the identity of that person because we were concerned about retaliation against that person. That's the reason that person's name was not in the complaint. It's clear from the text message, if we're all reading the same one, that GDS and Cabot assumed that Mr. Your Honor's would be a part of this action or was likely to be a part of this action. In joining, one does not necessarily file a complaint or institute a proceeding. One participates in the action, gives testimony, and is a witness. And that is how opt-ins are protected by this statute. Otherwise, the statute would leave a gaping hole under which people who are anticipated to join would not be covered. And where we had cases that cover everyone from people who refuse to release claims for back wages to people who won't attend a meeting that's not been paid and the many other circumstances where people have been protected, it seems absurd to exclude from protection a group of people who are the very people on whose behalf a complaint was made and who the law was designed to protect. Thank you very much.